UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IRA ALSTON,<br><br>　　　　Plaintiff,<br>v.<br><br>CAPTAIN BUTKIEWICUS et al.,<br><br>　　　　Defendants. | PRISONER<br>3:09-cv-00207 (CSH)<br><br>**RULING AND ORDER** |

HAIGHT, Senior District Judge:

　　Plaintiff Ira Alston commenced this *pro se* civil rights action *in forma pauperis*. When the defendants informed the Court that Alston had received $12,500 in settlement of an unrelated case, the Court ordered Alston to show cause why his *in forma pauperis* status should not be revoked. *See* Doc. #25. In response, Alston submitted an unsworn statement describing various expenditures totaling over $12,000. *See* Doc. #27. The defendants argued, however, that Alston should be required to document these expenditures.

　　By order filed December 16, 2009, the Court permitted Alston to refile his motion but required that the motion "be accompanied by a supporting affidavit, and with whatever other supporting evidence plaintiff chooses to submit." Doc. #38 at 4. On January 22, 2010, the Court explained that "[a]t a minimum, Alston should submit credible evidence that the statements in his motion for *in forma pauperis* status [doc. #2] were accurate when written." Doc. #43 at 3. The Court also noted that "Alston could achieve that goal and restore his credibility if he submits documentary evidence verifying the expenditures he claimed to have made in his 'Reply' of August 31, 2009." *Id.* Finally, the Court stated that, because Alston's credibility was in doubt, the Court would "assign little probative value to an affidavit or declaration which merely repeats that Alston 'engaged in the expenditures highlighted' in his original filing." *Id.* at 3-4.

Alston filed his renewed motion for reconsideration on March 1, 2010. *See* Mot. for Recons. [doc. #44]. In that motion, he makes several factual assertions that span twelve numbered paragraphs. He also submits, as exhibit 6 to that motion, an "affidavit" which purports to aver that the allegations in the accompanying motion are "true and correct to the best of my knowledge and belief 28 U.S.C. 1746, 18 U.S.C. 1621."[1] Mot. ex. 6 at 2 [doc. #44 at 30].

According to Alston's submission, the $12,500 in settlement proceeds were never in his possession. Instead, Alston alleges upon receiving the settlement check, he "endorsed the check-sum over to Dayna Shields," who is Alston's girlfriend. Mot. for Recons. ¶ 3. After Alston mailed the endorsed check back to his attorney, "Dayna Shields then traveling to the law offices . . . and obtained the endorsed-check." *Id.*

The remainder of Alston's submission purports to document several thousand dollars in expenditures since he received the settlement proceeds. Alston attached copies of a petty cash receipt and business cards from Attorney Frank P. Cannatelli documenting payment of $5,000 for a state habeas case and $2,000 for a civil rights case. Mot. ex. 1 [doc. #44 at 9]. The receipt contains the annotation "Money Received from Dayna Shields," and it is dated January 1, 2008.[2] *Id.* He also provides a copy of a carbon duplicate of a August 19, 2007 check written by Dayna

---

1. This "affidavit," which is unsworn, cites 17 U.S.C. § 1746, but does not comport with the requirements of that statute. The statute permits unsworn declarations "under penalty of perjury," but those declarations must "substantially" follow a certain form. That form is flexible but always requires the declaration to be made "under penalty of perjury." Alston's declaration omits that key phrase. However, in light of the solicitude afforded to *pro se* litigants, the Court assumes that Alston intended to make this declaration under penalty of perjury, and that given the opportunity, he would resubmit the same declaration in the proper form.

2. The receipt is somewhat questionable for two reasons. First, it is bizarre that the the "Amount" field contains "$2,000," and contains a "Note – Received for Civil Rights Case." Then the next line, almost as an afterthought, adds the phrase "Also – received $5,000 for State Habeas Case." It is implausible that any business would write out receipts for $7,000 in that fashion. Second, the receipt is questionable in light of the improbability that Attorney Cannatelli would conduct a $7,000 transaction on New Year's Day.

Shields and payable to Tashima Kelly, the mother of Alston's child, in the amount of $1,000. Finally, he states that he paid $330.53 toward the filing fee in another federal case. Alston claims that he has since paid "expenses dealing with his son and other minor personal expenses which have consumed the remainder of the settlement award." Mot. for Recons. ¶ 8. Alston claims that Dayna Shields, who was apparently the treasurer in charge of maintaining Alston's settlement proceeds, agreed to provide him with a corroborating affidavit, but she has not yet done so.

Thus, Alston has documented how he spent $8,330.53 of the $12,500. Although Alston provided copies of his inmate trust account for the period from July 2006 through June 2009, to support his statement that he spent approximately $1,600 in the commissary, there is nothing to suggest that those expenditures were spent out of the $12,500 settlement proceeds. Indeed, in his unsworn reply memorandum, Alston expressly alleges that the balance in his inmate account is *not* maintained from the settlement proceeds, and instead is funded by deposits from "family and/or friends . . . whenever these individuals could help the plaintiff with his commissary purchases." Reply [doc. #52] at 10.

The defendants argue that Alston has not complied with the Court's direction and has not shown that he no longer has access to sufficient funds from the settlement monies which are unaccounted for to pay the filing fee in this case. Pointing to the lack of documentary evidence, defendants argue that Alston's inability to "obtain an affidavit from either Ms. Shields or Ms. Kelly suggests that they were not willing to perjure themselves." Opp'n [doc. #53] at 3. Defendants also point to several inconsistencies between Alston's story today and the several representations he has made to this Court, concerning his finances, in previous cases.

The Court agrees that Alston has not entirely redeemed his credibility. Indeed, if anything, his latest motion calls his previous statements about the settlement proceeds even more into question. Similarly, it is evident that Alston was insufficiently candid with the Court in his previous motions to proceed *in forma pauperis*. By transferring the settlement proceeds to Ms. Shields, Alston avoided disclosing that wealth, and his ongoing contributions to the support of his son, while continuing to exercise control over (and make payments from) a substantial sum of money.

Nevertheless, Alston's motion for reconsideration still holds some substance, and the Court is sufficiently convinced that he is *currently* an individual of limited means. While the Court cannot be certain that some portion of the settlement proceeds received in 2007 remained in Alston's possession on February 3, 2009, when he filed his motion to proceed *in forma pauperis* in this case, the record suggests more strongly that little to none of those proceeds remain today, more than a year later. Under these circumstances, revoking his *in forma pauperis* status might be an appropriate sanction for a lack of candor, but it would probably work an injustice that is out of proportion to the offense.

The Court concludes that Alston's motion for reconsideration [**Doc. #44**] should be, and is, **GRANTED,** and the relief requested is likewise **GRANTED**.

It is SO ORDERED.

Dated: New Haven, Connecticut
May 7, 2010

                                              /s/ *Charles S. Haight, Jr.*
                                              Charles S. Haight, Jr.
                                              Senior United States District Judge